**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **MUSA HARRIS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 21-CV-1563** |
| **v.** | : | **(JUDGE MANNION)** |
| **KINGSTON MUNICIPAL POLICE DEPARTMENT, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Kingston police officers arrested Musa Harris and charged him with several crimes after an encounter at his parked car. He was acquitted of those charges, and now claims that the police violated his constitutional rights, initiated a malicious prosecution, and committed other tortious acts. Discovery has been conducted, and Defendants have moved for summary judgment. (Doc. 46). For the reasons that follow, Defendants' motion will be granted.

## I.    BACKGROUND[1]

On the evening of September 13, 2019, Plaintiff and his girlfriend sat in his car, which was parked on a public street in Pringle, Pennsylvania. He carried, in a cross-body bag, a clear plastic sandwich bag with a small amount of marijuana. At the time, he had a Pennsylvania Medical Marijuana license.

Plaintiff testified the pair had not smoked marijuana in the vehicle that evening, but that there were cigar ashes on his T-shirt and that his bag also contained a syringe with THC liquid and a vape cartridge.

An officer holding a flashlight approached the driver's side window where Plaintiff sat. He asked Plaintiff what he was doing and told him that the police were called there about a suspicious vehicle. The officer said that he smelled marijuana in the car, but Plaintiff denied smoking marijuana. The officer then said that he smelled burnt marijuana.

An officer asked Plaintiff to exit the vehicle and speak with them. He refused, and the officer reached inside the window to open the car door.

---

[1] The facts are taken from the Defendants' statement of material facts, (Doc. 50), Plaintiff's answer to Defendants' statement, (Doc. 58), depositions of Plaintiff, (Doc. 50 at 23–72), Officer John Bevilaqua, (Id. at 74–83), Officer Matthew Bonawits, (Id. at 88–101), and Sergeant Jason Height, (Id. at 103–123) the affidavit of probable cause, (Id. at 85–86), the Luzerne County criminal docket, (Id. at 125–27), and a video recording of the arrest. (Doc. 51).

Plaintiff started to close the window on the officer's arm, and the officer then opened the door and told Plaintiff to get out of the car. Plaintiff did so, and officers handcuffed him. They told Plaintiff that he was under arrest and searched his cross-body bag, removing the plastic bag of marijuana. Plaintiff was not physically injured by the arrest.

Plaintiff was brought to the Luzerne County Correctional Facility, from which he was released on bail the next day. He was charged with resisting arrest, obstructing the administration of law, possession of drug paraphernalia, and possession of an adulterated/misbranded substance (which charge was withdrawn before trial). Plaintiff was acquitted after trial in the Luzerne County Court of Common Pleas.

Plaintiff brings claims of constitutional violations through 42 U.S.C. §§1983, 1985(3), and 1986 (Count 1); malicious prosecution through §1983 (Count 2); state-law tort claims against the individual Defendants (Count 3); and a *Monell* claim against the Kingston Municipal Police Department and Kingston Borough (Count 4).

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file]

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge that burden by showing that "on all the essential

elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III.    DISCUSSION

### A. Defendants

#### 1. Kingston Municipal Police Department

The parties agree that the Kingston Municipal Police Department, a sub-unit of Defendant Borough of Kingston, should be dismissed. *See*

*Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 ("[W]e treat the municipality and its police department as a single entity for purposes of section 1983 liability."); *Monastra v. Delaware Cnty. Sheriff's Off.*, 49 A.3d 556, 558 (Pa. Commw. Ct. 2012). (Doc. 47 at 14–15; Doc. 57 at 1).

### 2. Police Officer Defendants

To the extent Plaintiff sues the police officers in their official capacities, such claims are redundant because Plaintiff also sues the Borough of Kingston. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Plaintiff's claims against the officers in their official capacities will therefore be dismissed.

### 3. Kingston Borough

Plaintiff brings a "Monell Claim" against the Kingston Borough. (Doc. 1 at 10). *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 701 (1978) allowed for municipal liability under 42 U.S. §1983.

"A municipality … may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 692). "But, under §1983, local

governments are responsible only for their own illegal acts." *Id.* "They are not vicariously liable under §1983 for their employees' actions." *Id.* So:

> Plaintiffs who seek to impose liability on local governments under §1983 must prove that action pursuant to an official municipal policy caused their injury. Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. These are actions for which the municipality is actually responsible.
>
> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of §1983. A municipality's culpability for a deprivation of rights is most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under §1983.

*Id.* at 60–61 (internal citations and quotations omitted).

Plaintiff alleges that Kington Borough "failed to adopt [] adequate policies, practices or customs to adequately supervise or train police officers and/or officials, and/or to adequately screen police candidates during the hiring process." (Doc. 1 ¶54). He also alleges that Kingston "knew that [its] police officer employees and officials would confront law abiding citizens such as Plaintiff, and failed to implement policy measures to protect law abiding citizens such as Plaintiff from the type of misconduct described in this Complaint." (Id. ¶56). According to Plaintiff, Kingston Borough's failures

amounted to deliberate indifference and caused the deprivation of several of his constitutional rights. (Id. ¶¶57–58).

A plaintiff bringing a failure or inadequacy claim must show that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). Defendants assert that Plaintiff has made no such showing. (Doc. 47 at 42). Plaintiff's response is this:

> The jury should be allowed to watch the video and audio recording of the arrest and determine whether the officers involved had acted reasonably and exercised due diligence in arresting Plaintiff and then going back to the station and writing up false criminal charges for which there was no basis of law or fact. Whether the officers were trained on how to read statutes and apply them to the fact should be a jury question.

(Doc. 57 at 3).

Plaintiff offers no evidence pertaining to municipal policymakers. The video of Kingston police officers does not create genuine dispute of fact as the Borough's deliberate indifference. Summary judgment will therefore be granted in favor of Kingston Borough.

### B. Count One – (Sections 1983, 1985(3), and 1986)

Plaintiff alleges that Defendants "deprived Plaintiff Harris of his constitutional rights," (Doc. 1 ¶8), and "acted in concert and conspiracy to deprive Plaintiff Harris[] of his constitutional and statutory rights," (Id. ¶9).

### 1. Deprivation of constitutional rights (§1983).

42 U.S.C. §1983 "provides a cause of action to any individual who has been deprived of his rights under the Constitution or other federal laws by a person 'acting under color of law.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007)).

According to the Complaint, Plaintiff suffered violations of his rights under the First, Fourth, and Fourteenth Amendments. (Doc. 1 ¶66).

### a. First Amendment

Plaintiff alleges that he was deprived of his rights to "freedom of speech, association, and expression." (Doc. 1 ¶66). A First Amendment §1983 claim requires First Amendment protected activity. *See Palardy v. Twp. of Millburn*, 906 F.3d 76, 80 (3d Cir. 2018); *Swineford v. Snyder Cnty., Pa.*, 15 F.3d 1258, 1270 (3d Cir. 1994). Plaintiff has made no allegation of, nor identified any evidence of, First Amendment protected activity.

### b. Fourth Amendment

Plaintiff alleges that he was subjected to an unreasonable arrest and search. (Doc. 1 ¶¶14).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It "has been declared enforceable against the States through the Due Process Clause of the Fourteenth." *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). An arrest without probable cause is a violation of the Fourth Amendment actionable under §1983. *Walmsley v. City of Phila.*, 872 F.2d 546, 551 (3d Cir. 1989) (citing *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978)).

Defendants dispute Plaintiff's assertion that they lacked probable cause to arrest him. They argue that probable cause existed "to arrest Plaintiff for providing false information to a police officer, obstruction of justice, and assaulting a police officer." (Doc. 47 at 14). Plaintiff contends that "[t]he video clearly shows that the officers did not have probabl[e] cause to arrest" him. (Doc. 57 at 2).

"[P]robable cause exists if there is a fair probability that the person committed the crime at issue." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir.

- 10 -

2000)). "Put another way, 'probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Id.* (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).

At what point was Plaintiff arrested? The parties appear to agree that an arrest was effected when Plaintiff was placed in handcuffs. (Doc. 1 ¶13 ("Plaintiff, was grabbed by Defendant Officer Matthew Alan Bonawits, handcuffed, and arrested.")); (Doc. 47 at 15 ("Defendant Officers acted appropriately when they … arrested Plaintiff. Plaintiff was eventually removed from the vehicle after reasonable and necessary force was utilized to overcome his resistance and he was placed into handcuffs.")).

Having received a suspicious vehicle report, the police approached the car, which was on a public street, to investigate. Once there, they smelled burnt marijuana. Smoking marijuana, even as a lawful possessor for medical use, remains prohibited by Pennsylvania law. 35 Pa. Stat. Ann. §10231.304(b)(1); *see also Commonwealth v. Barr*, 266 A.3d 25, 41 & n.13 (2021).

The police have sworn and testified that they smelled burnt marijuana. (Doc. 50 at 85, 90, 123). Officers also averred in the affidavit and testified

that they noticed "loose marijuana particles … scattered about [Plaintiff's] shirt" while they questioned him from outside the vehicle. (Doc. 50 at 85, 111). Plaintiff, though, testified that neither he nor his girlfriend had smoked marijuana in his car that evening. (Doc. 50 at 39). He also testified that he had ashes on his t-shirt, but that they were "[p]robably from the cigar that I was smoking." (Doc. 50 at 35).

Plaintiff's testimony that he had not smoked marijuana in his car the evening of his arrest does not create a genuine dispute as to the fact that the police smelled burnt marijuana. It does not contradict the officers' assertion that they smelled marijuana, for Plaintiff does not contend that *there was no marijuana odor*; indeed, he has testified that he had previously smoked marijuana in his car, and that the last time he had done so was "[m]aybe the night before." (Doc. 50 at 44–45). Neither does Plaintiff's testimony that the ashes on his shirt were from a cigar create a genuine dispute of material fact—he does not dispute that there *were no* ashes on his shirt, and officers' observation of ashes of some type, especially paired with the smell of marijuana, could have contributed to probable cause to arrest.

Having smelled burnt marijuana upon approaching Plaintiff's car and having observed ashes on his shirt, the police had probable cause to arrest Plaintiff. These facts together, and in light of Plaintiff's refusal to provide his

name or exit the vehicle to speak with police, were sufficient to warrant a reasonable belief that Plaintiff had smoked marijuana, in violation of Pennsylvania law.

Defendants argue that there existed probable cause to arrest Plaintiff for other crimes, too. They posit that they had probable cause to arrest him for a several actions which amounted to obstruction of justice.[2] According to Defendants, Plaintiff obstructed justice by refusing to provide his name, by refusing to exit the vehicle, and by attempting to close the car's window on Officer Bonawits's arm. (Doc. 47 at 25–26). These facts are not disputed by Plaintiff. (Doc. 58 ¶¶21, 23, 28–29).

Under these circumstances, the police had probable cause to believe that Plaintiff had committed the crime of obstruction of justice. They had informed him that they were investigating a call about a suspicious vehicle,

---

[2] *See* 18 Pa. Cons. Stat. §5101 ("A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions."). Defendants also appear to suggest that probable cause to believe that Plaintiff committed the crime of resisting arrest justified his arrest. (Doc. 27 at 15). But the "resisting arrest charge could not have provided probable cause for the arrest ab initio." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995).

(Id ¶¶20, 25), and he intentionally obstructed their investigation by refusing to exit the car, refusing to provide his name, and by closing the window on the officer's arm. *Cf. Minatee v. Phila. Police Dep't*, 502 Fed. App'x 225, 228–29 (3d Cir. 2012) (non-precedential) (concluding that police officers had probable cause to arrest the plaintiff for a violation of §5101 where they had stopped the car because its owner had a suspended license, the plaintiff contested that the license was suspended, told the officers that he, and not the owner, had been driving, and sat in the car to prevent it from being towed).

There is thus no genuine dispute of material fact as to the existence of probable cause to arrest Plaintiff, and so the arrest did not violate his rights under the Fourth Amendment.

Plaintiff also alleges that the search conducted by the officers was unreasonable. After Plaintiff was placed in handcuffs, one of the officers searched the cross-body bag Plaintiff had been carrying. (Doc. 58 ¶32–34).

After police make an arrest, they may, consistent with the Fourth Amendment, "search the person arrested to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *United States v. Shakir*, 616 F.3d 315, 317 (3d Cir. 2010) (quoting *Chimel v. California*, 395 U.S. 752, 762–63 (1969)). "The permissible scope of a search

incident to arrest includes 'the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.'" *Id.* (quoting *Chimel*, 395 U.S. at 763). Put differently, such a search is permissible if, "under all the circumstances, there remains a reasonable possibility that the arrestee could access the weapon or destructible evidence in the container or area being searched." *Id.* at 321. In *Shakir*, the Third Circuit concluded that the search of a criminal suspect's bag incident to arrest was constitutional "[a]lthough he was handcuffed and guarded by two policemen." *Id.* The bag was "literally at his feet, so it was accessible if he had dropped to the floor." *Id.*

The police here searched Plaintiff's cross-body bag which was still in his immediate reach. (Doc. 51). Although he was handcuffed, this was a permissible search incident to arrest under *Shakir*.

### c. Fourteenth Amendment

To the extent Plaintiff claims that the police's conduct violated his substantive due process rights, such a claim is inappropriate. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular source of government

- 15 -

behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'").

Further, Plaintiff has identified no violation of his procedural due process rights. He has not shown that he was deprived of life, liberty, or property without due process of law. *See* U.S. Const. amend. XIV §2. He was arrested and searched based on probable case, and he was afforded his due criminal process in the Luzerne County Court of Common Pleas.

Finally, to the extent Plaintiff claims that he was denied equal protection of the law, that claim is without support. "To bring a successful claim under 42 U.S.C. §1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014). Plaintiff points to no evidence of discrimination. Indeed, he concedes that "the record does not show that any of the officers acted on the basis of racial animus." (Doc. 57 at 2).

### 2. Conspiracy to deprive Plaintiff of equal protection (§1985(3)) / Neglect to prevent deprivation of equal protection (§1986)

Section 1985 creates a private cause of action against persons who conspire for the purpose of depriving a person "of the equal protection of the laws." 42 U.S.C. §1985(3). Section 1986 provides an action against one who

knows such a deprivation is "about to be committed," has the "power to prevent or aid in preventing the commission" of it, and "neglects or refuses to do so." 42 U.S.C. §1986.

Because Plaintiff has identified no conspiracy or deprivation of equal protection, his claims under these provisions must fail.

### C. Count Two: Malicious Prosecution[3]

A §1983 malicious prosecution claim requires a showing that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). Defendants assert that there was probable cause for the charges brought against Plaintiff and that there is no evidence that they acted maliciously or for a purpose other than bringing Plaintiff to justice. (Doc. 47 at 31–32). Plaintiff in response posits that the video demonstrates malicious

---

[3] The complaint does not specify whether this claim is brought under federal or state law, but Plaintiff's brief in opposition to summary judgment describes it as a "malicious prosecution claim under §1983." (Doc. 57 at 2). Plaintiff asserts a state-law malicious prosecution claim in Count 3. (Doc. 1 ¶51).

prosecution and argues that no probable cause existed for the charges which were brought against him. (Doc. 57 at 2).

Unlike one faced with a claim of false arrest (whose actions are justified as long as probable cause existed for some crime), "a defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified." *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007). Accordingly, "courts 'need to separately analyze the charges claimed to have been maliciously prosecuted.'" *Id.* (quoting *Posr. v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)). Here, four charges were brought against Plaintiff.

Before discussing each one individually, the court notes that the charges brought against Mr. Harris were held over for proceedings in the Court of Common Pleas following a preliminary hearing by Magisterial District Judge David A. Barilla. (Doc. 50 at 125–127; Docket No: MJ-11106-CR-0000196-2019). "[A] holding-over represents a decision by a neutral and experienced judicial officer that the prosecution has made out a prima facie case." *Cosmas v. Bloomingdales Bros., Inc.*, 660 A.2d 83, 86 (Pa. 1995). Though assuredly not conclusive (or even presumptive, *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000)) as to probable cause, such a decision is evidence of probable cause. *Zimmerman v. Corbett*, 2015

WL 539783, at *5 (M.D. Pa. 2015); *Kline v. Hall*, 2013 WL 1775061, at *5 (M.D. Pa. 2013).

### 1. Obstruction of justice

Plaintiff was charged with a violation of 18 Pa. Cons. Stat. §5101, which prohibits "intentionally obstruct[ing], impair[ing], or pervert[ing] the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act." As discussed *supra* Section III.B.1.b, probable cause to believe that Plaintiff had committed this crime existed.

### 2. Resisting arrest

Plaintiff was also charged with a violation of 18 Pa. Cons. Stat. §5104, which provides that "[a] person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome their resistance." 18 Pa. Cons. Stat. §5104.

Defendant Bevilaqua testified that while Plaintiff "was being placed in the custody, he was tensing his arms and trying to pull away from the police." (Doc. 50 at 79–80). Defendants Height and Bonawits in their affidavit of

probable cause averred that after Plaintiff exited the vehicle, "necessary force was utilized to overcome his resistance and he was placed into handcuffs." (Doc. 50 at 86).

Plaintiff first notes that "he was not told he was under arrest until the moment the handcuffs were being placed on him," presumably to suggest that he could not have resisted an arrest he did not realize was occurring. (Doc. 57 at 5). The defendant in *Commonwealth v. Clemens*, 242 A.3d 659, 666 (Pa. Super. Ct. 2020) advanced the same argument. The court there reasoned that "[r]egardless of whether the officers used the word 'arrest,' it would have been clear to a reasonable person that they ordered [the defendant] to get out of the vehicle, and attempted to extricate him from it, in an effort to effectuate an arrest." *Id.* at 667. Here, too, the officers ordered Plaintiff to exit his car and attempted to extricate him from it. A reasonable person in Plaintiff's position would have realized that they were attempting to effectuate an arrest.

Plaintiff further notes that "a valid charge of resisting arrest requires an underlying arrest, which in turn, requires that the arresting officer possess probable cause." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999).

(Doc. 57 at 6). As discussed *supra* Section III.B.1.b, the arresting officers here possessed probable cause.

Plaintiff next argues that "[n]o reasonable police officer could have believed that Plaintiff had committed the crime of resisting arrest merely by tensing up his arms." (Doc. 57 at 5). He asserts that "[t]he Officers' testimony as well as the video clearly show that Plaintiff did not commit any such crime and no reasonable officer could have believed that he did at the time that the charges were filed nor at the time that the Officers involved continued to prosecute the case." (Doc. 57 at 6). He does not identify evidence contradicting the officers' testimony regarding his resistance—the video does not create a genuine dispute because, from the moment Plaintiff exits the car until just before the handcuffs are secured, it either does not show him at all or is rendered inscrutable by its unsteadiness. (Doc. 51 at 3:20–3:40).

The parties direct our attention to Pennsylvania appellate decisions applying §5104. In *Commonwealth v. Rainey*, 426 A.2d 1148, 1149 (Pa. Super. Ct. 1981), after he was escorted to a police van, the defendant "attempted to run away," and when a pursuing officer grabbed him by a coat sleeve, he "began to shake himself violently, to wiggle and squirm in an attempt to free himself of the officer's grasp." He continued to resist after an

officer struck him on the head with a nightstick, and three officers finally subdued and handcuffed him. *Id.* In reviewing his conviction under §5104, the court concluded that the Commonwealth had not "proved beyond a reasonable doubt all the elements of the crime of resisting arrest." *Id.* at 1150. Likewise, the court in *Commonwealth v. Eberhardt*, 450 A.2d 651, 653 (Pa. Super. Ct. 1982) found insufficient evidence of resisting arrest even though after officers removed the defendant from under his bed, "he began to scuffle with them" and "[d]uring the scuffle, much furniture was overturned and one of the officers sustained a bruise on his forearm." *Id.* at 652. The defendant broke free of the officers and fled the area but was located and arrested three days later. *Id.*

*Commonwealth v. Miller*, 475 A.2d 145, 146–47 (Pa. Super. Ct. 1984), on the other hand, involved a defendant who, when officers attempted to grab his arms, "struggled by flailing his arms and by moving the upper part of his body horizontally back and forth in a rapid manner." He "also attempted to 'push through'" officers, resisted officers' attempts to handcuff him by "'straining' against them with his arms and the upper part of his body," and "continued to struggle as the police officers attempted to place him in the rear of a police car." *Id.* at 147. The court affirmed his conviction under §5104. *Id.* The court in *Commonwealth v. Thompson*, 922 A.2d 926, 928 (Pa.

Super. Ct. 2007) also affirmed a §5104 conviction where officers "struggled to pull [the defendant] apart from her husband with whom she had interlocked her arms and legs." One officer "testified that his attempts to restrain the couple to place them under arrest left him 'exhausted.'" *Id.* The court reasoned that the defendant's "use of passive resistance requiring substantial force to overcome provided sufficient evidence for upholding the resisting arrest conviction." *Id.* And in *Commonwealth v. McDonald*, 17 A.3d 1282, 1285–86 (Pa. Super. Ct. 2011), there was sufficient evidence to sustain a conviction for resisting arrest where the defendant had fled the scene of the crime on foot and "led officers on a chase through traffic for several blocks," "multiple officers were needed" to hold him on the ground after he slipped, and officers "struggled to force his hands behind his back." He continued to resist even after officers threatened to tase him. *Id.* at 1286.

Although *Rainey*, *Eberhardt*, *Miller*, *Thompson*, and *McDonald* are instructive as to §5104's scope, those cases addressed challenges to the sufficiency of evidence for conviction. The standard for evaluating such a challenge is "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Brooks*, 7 A.3d 852, 856–57 (Pa. Super. Ct. 2010).

Probable cause, by contrast, requires only a "fair probability that the person committed the crime at issue." *Dempsey*, 834 F.3d at 467. Accordingly, it does not require "the same type of specific evidence of each element of an offense as would be needed to support a conviction." *Id.* at 477 (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)).

Against this standard the court considers the uncontradicted testimony that Plaintiff tensed his arms and tried to pull away from the police while they arrested him and that the police had to use force to overcome his resistance. Given that "passive resistance requiring substantial force to overcome" is sufficient to sustain a §5104 conviction, *Thompson*, 922 A.2d at 928, these facts create a fair probability that Plaintiff had committed this crime. Especially in light of his foregoing refusal to comply with instructions, a reasonable person could believe that he tensed his arms and tried to pull away in order to prevent the officers from effectuating arrest. And although the record may not demonstrate with certainty that *substantial* force was required to arrest him, the facts that Plaintiff had employed more than passive resistance and that the police needed to use force to overcome his resistance are enough to warrant at least a reasonable believe that it was.

There is thus no genuine dispute of material fact as to whether the §5104 charge was initiated with probable cause: it was.

### 3. Possession of adulterated/misbranded substance

The next charge against Plaintiff was brought under 35 Pa. Stat. Ann. 780-113(a)(1). (Doc. 50 at 126). Section 780-113(a)(1) prohibits "[t]he manufacture, sale or delivery, holding, offering for sale, or possession of any controlled substance, other drug, device or cosmetic that is adulterated or misbranded." Under the Controlled Substance, Drug, Device, and Cosmetic Act, a controlled substance "shall be deemed to be misbranded … "[i]f any word, statement or other information required by or under authority of this act to appear on the label, or labeling is not prominently placed thereon." 35 Pa. Stat. Ann. §780-180(3). Marijuana is a Schedule I controlled substance. *Id.* §780-104(1)(iv). The Medical Marijuana Act provides for the lawful possession of medical marijuana in accordance with certain requirements. *Id.* §10231.303. Two of these requirements are:

> (6) Medical marijuana that has not been used by the patient shall be kept in the original package in which it was dispensed.
> …
> (8) Products packaged by a grower/processor or sold by a dispensary shall only be identified by the name of the grower/processor, the name of the dispensary, the form and species of medical marijuana, the percentage of

tetrahydrocannabinol and cannabinol contained in the product and any other labeling required by the department.

*Id.* §10231.303(b). Grower/processors must package medical marijuana products in a package that "lists all product ingredients and includes a warning for known allergens, such as tree nuts." 28 Pa. Code §1151a.34(b)(6).

It is undisputed that the police found in Plaintiff's cross-body bag a clear plastic sandwich bag containing marijuana. (Doc. 50 ¶11, 13, 34; Doc. 58 ¶11, 13; Doc. 50 at 52). There was thus probable cause to believe that he possessed a controlled substance that was misbranded, as this marijuana was outside its original package and without any label. This charge was not initiated without probable cause.

### 4. Possession of drug paraphernalia

Finally, Plaintiff was charged under 35 Pa. Stat. Ann. §780-113(a)(32), which prohibits "[t]he use of, or possession with intent to distribute, drug paraphernalia for the purpose of," among others, "storing, containing," or "concealing … a controlled substance."   "'Drug paraphernalia' means all equipment, products and materials of any kind which are used, intended for use or designed for use in" the above listed purposes. *Id.* §780-102(b).

Again, Plaintiff was found to possess a plastic bag containing marijuana. That plastic bag was inside Plaintiff's cross-body bag. A

reasonable person could conclude that those bags were used to store, contain, or conceal marijuana, a controlled substance. So there existed probable cause to believe that Plaintiff had committed the crime of using drug paraphernalia.

### 5.  Conclusion - Section 1983 Malicious Prosecution

As discussed above, the court concludes that the criminal charges brought against Plaintiff were not initiated without probable cause. Moreover, Plaintiff has not identified evidence suggesting that his prosecution was motivated by an improper purpose. The video shows Plaintiff's arrest and the search incident to that arrest. It has little bearing on his subsequent prosecution. In it the court does not find, and Plaintiff does not point to, evidence suggesting that the police acted maliciously or for a purpose other than bringing Plaintiff to justice when they initiated charges against him.

For these reasons, Defendants are entitled to summary judgment on Plaintiff's §1983 malicious prosecution claim.

### D. Count Three – State Law Claims

Plaintiff brings state-law tort claims against the individual Defendants "including but not limited to assault, battery, false arrest, false imprisonment, invasion of privacy, casting a false light and malicious prosecution." (Doc. 1 ¶51). Defendants argue that these claims lack evidence. (Doc. 47 at 33–37).

Plaintiff appears to have abandoned all but his malicious prosecution claim.

In opposition to summary judgment on Count 3, he argues:

> The video speaks for itself and the jury should be allowed to watch the video and determine if the elements of a malicious prosecution case have been met. There was no probable cause to suggest that Plaintiff had committed the following crimes for which he was wrongfully and unreasonably charged and lat[]er acquitted or charged dropped on the eve of trial due to the unreasonable nature of the charge.

(Doc. 57 at 3). He does not mention, let alone cite evidence supporting, his claims of assault, battery, false arrest, false imprisonment, invasion of privacy, or casting a false light. He has therefore not met his burden as to these claims.

As to his malicious prosecution claim—like its federal equivalent, a state-law malicious prosecution claim requires "the institution of proceedings against the plaintiff without probable cause and with malice." *Alleyne v. Pirrone*, 180 A.3d 524, 528 n.3 (Pa. Commw. Ct. 2018). As discussed *supra* Section III.C, the charges against Plaintiff were not initiated without probable cause, and he has not identified evidence of malice on the part of Defendants. His state-law malicious prosecution claim must therefore fail.

### E. Count Four – Monell Claim

As discussed *supra* Section III.A.3, Plaintiff has identified no evidence of actions by municipal policymakers. His *Monell* claim is therefore unsupported.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted. An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 19, 2024**
21-1563-01